# APPEAL NO. 14-1333

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### DIAMONDBACK FIREARMS, LLC

**Plaintiff-Appellant,**

**v.**

### SAEILO, INC., DBA KAHR ARMS, A DELAWARE CORPORATION, AND KOOK JIN MOON, AN INDIVIDUAL

**Defendants-Cross-Appellants.**

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION 6:10-CV-01664-JA-DAB, JUDGE JOHN ANTOON II

## CORRECTED
## ANSWER AND CROSS APPEAL BRIEF OF DEFENDANTS-CROSS-APPELLANTS, KOOK-JIN MOON AND SAEILO, INC. D/B/A KAHR ARMS

Douglas C. Spears
SWANN HADLEY STUMP DIETRICH, & SPEARS, P.A.
1031 W. Morse Boulevard, Suite 350
Winter Park, Florida 32789
Telephone:  (407) 647-2777
Facsimile:   (407) 740-3114
Email: dspears@swannhadley.com
Counsel for Defendants-Cross-Appellants

**September 4, 2014**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Diamondback Firearms, LLC v. Kook-Jin Moon and Saeilo, Inc. d/b/a/ Kahr Arms

## No. 14-1333

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Defendants-Cross-Appellants, Kook-Jin Moon and Saeilo, Inc., d/b/a/ Kahr Arms, certifies the following:

1.    The full name of every party or amicus represented by me is:

Kook-Jin Moon and Saeilo, Inc., d/b/a Kahr Arms

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by me are:

Saeilo, Inc.

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or agency or are expected to appear in this court are:

Douglas C. Spears, Esq., Swann Hadley Stump Dietrich & Spears, P.A.
Clifford Kelly, Esq., Alix, Yale & Ristas, LLP

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

I.    JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    Rulings for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    The Trial Court Correctly Ruled That The Term "Half-Cocked"
        Required No Construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.    The term "half-cocked position" is defined by the
            language of the '914 Patent itself and is understood
            by the common meaning of the words used. . . . . . . . . . . . . 12

        2.    The District Court correctly rejected Diamondback's
            Proposed construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        a)    The claims and specifications do not support the definition proposed by Diamondback. . . . . . . . . . . . . 18

        b)    Giving the claim terms their usual and customary meaning does not render any limitation mere surplusage or redundant. . . . . . . . . . . . . . . . . . . . . . . . 24

        c)    The prosecution history does not support Diamondback's proposed construction. . . . . . . . . . . . 25

    3.    There was no juror confusion as to the meaning of the claim terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    4.    The trial court correctly denied JMOL as to invalidity for indefiniteness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

B.    The Court Correctly Denied JMOL On Invalidity As The Invention Embodied In The '914 Patent Was Neither Anticipated Nor Obvious. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    1.    The Glock patent does not anticipate Claim 12 of the '914 Patent because it does not disclose a second biasing means urging the cocking and releasing element toward its first position. . . . . . . . . . . . . . . . . . . . . . 32

    2.    Diamondback failed to prove obviousness by clear and convincing evidence and the record contains substantial competent evidence to support the jury's verdict. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        a)    The Glock and Dunn Patents together do not disclose every element of Claim 1 of the '914 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

        b)    The Dunn patent fails to disclose the additional limitations of Claims 2-6, 8 and 12 of the '914 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

3.   Substantial competent evidence shows that the combination of the Glock and Dunn Patents is illogical and in no way suggested by the Dunn Patent itself. . . . . . . . . . . . . . . . . . . . 37

VII.   CONCLUSION AS TO PRINCIPAL APPEAL . . . . . . . . . . . . . . . . . . . . . 39

VIII.   ARGUMENT AS TO ISSUES ON CROSS-APPEAL . . . . . . . . . . . . . . . . 39

A.   Applicable Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

B.   The Trial Court Erred in Entering an Amended Final Judgment in This Cause That Did Not Fully Adjudicate The Rights of The Parties Nor Incorporate The Jury's Explicit Findings. . . . . . . . . . . 40

C.   The Trial Court Erred in Refusing To Grant Kahr Further Relief Under 28 U.S.C. §2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

1.   The trial court erred in declaring Kahr's Prayer for Relief as insufficient to state a claim for damages or other relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

a.   The trial court's ruling violates public policy . . . . . . . 51

b.   Diamondback was fully on notice regarding the ultimate facts at issue and that Kahr was seeking relief, including damages . . . . . . . . . . . . . . . . . . . . . . 52

c.   The trial court has eviscerated Kahr's right to relief for Diamondback's infringement based on the barest of technicalities . . . . . . . . . . . . . . . . . . . . . 54

d.   The trial court has compounded its error by concluding that Kahr is not entitled to further relief under §2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

            e.    The trial court abused its discretion in denying
                   Kahr's motion for leave to amend and precluding
                   discovery as to damages . . . . . . . . . . . . . . . . . . . . . . . . 58

      2.    The trial court erred in denying Kahr injunctive relief. . . . . . 59

IX.   CONCLUSION AND STATEMENT OF RELIEF SOUGHT
      ON CROSS-APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

# TABLE OF AUTHORITIES

## CASES

*A.E. By and Through Evans v. Independent School Dist. No. 25, of Adair County, Okl.*, 936 F.2d 472 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

*Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*,188 F.R.D. 662 (S.D. Fla. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163 (3d Cir. 1986) . . . . . . . 57

*Alpine State Bank v. Ohio Cas. Ins. Co.*, 941 F.2d 554 (7th Cir. 1991) . . . . . . . . 42

*Amgen, Inc. v. F. Hoffman–La Roche Ltd.*, 580 F.3d 1340 (Fed.Cir. 2009) . . . . 35

*Arlington Industries, Inc.. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Biacore v. Thermo Bioanalysis Corp.*, 79 F. Supp.2d 422 (D. Del. 1999) . . . . 65

*Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 30

*Bowman v. U. S. Dept. of Agriculture*, 352 F.2d 281 (5th Cir. 1965) . . . . . . . . . 54

*C.B. v. Pittsford Cent. Sch. Dist.*, 2009 U.S. Dist. Lexis 84010, 5-6 (W.D.N.Y.
Sep. 15, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 258 F. Supp.2d 355 (D. Del. 2003) . . . . 63

*Capo, Inc. v. Dioptics Medical Products, Inc.,* 387 F.3d 1352
(Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48, 56, 57

*Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182
(Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*CoreBrace LLC v. Star Seismic LLC.*, 566 F.3d 1069 (Fed. Cir. 2009) . . . . . . . . 39

*Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367
(Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*,
635 F.3d 1373 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 31

*Daiichi Sankyo, Co., Ltd. v. Matrix Laboratories, Ltd.*, 619 F.3d 1346
(Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) . . . . . . . . . . . . . . . . . 61, 62

*Endo Pharmaceuticals Inc. v.Actavis, Inc.*, 746 F.3d 1371 (Fed. Cir. 2014) . . . . 58

*ERBE Elektromedizin GmbH v. Canady Technology LLC*, 629 F.3d 1278
(Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007) . . . . . . . . . . . . . . . . . . . 54

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) . . . . . . 15

*Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . 17

*Georgia-Pacific Corp. v. U. S. Plywood Corp.*, 258 F.2d 124 (2d Cir. 1958) . . . 31

*Government Emp. Ins. Co. v. LeBleu*, 272 F.Supp. 421 (D.C. La. 1967) . . . . . . . 42

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323
(6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Great Atlantic & Pac. Tea Co. v. Supermarket Equipment, Corp.*, 340 U.S.
147  (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244
(Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*,
49 F.3d 1551 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*Hockerson-Halberstadt, Inc. v. Avia Group Intern.* 222 F.3d 951
(Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369
(Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hybritech Inc. v.  Abbott Laboratories*, 849 F.2d 1446 (Fed. Cir. 1988)  . . . . . . 66

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent
Litigation*, 676 F.3d 1063 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*In re Laitram Machinery, Inc.*, 52 F.3d 343 (Fed. Cir. 1995)  . . . . . . . . . . . . 51, 56

*In re Montgomery*, 677 F.3d 1375 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 32

*KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)  . . . . . . . . . . . . . . . 35, 36, 38

*Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530
(5th Cir.1978)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Lewis v. Regional Director for Broward County*, 520 Fed.Appx. 932
(11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Losey v. Warden*, 521 Fed. Appx. 717 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . 40

*MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323
(Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mack v. Mazzarella*, 544 Fed.Appx. 800 (11t6h Cir. 2014) . . . . . . . . . . . . . . . . 40

*Mid–Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*,
685 F.3d 977 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012) . . . . . . . . . . . . . 38

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 189 L.Ed.2d 37
(2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Novartis AG v. Lee*, 740 F.3d 593 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 39

*Novozymers A/S v. Genencor Int'l, Inc.*, No. CIV A 05-160-KAJ, 2007 WL
506828, at \*17 (D. Del. Feb. 16, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*Nystrom v. TREX Co., Inc.*, 424 F.3d 1136 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . 23

*O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co. Ltd.*,
521 F.3d 1351 (Fed.Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309
(Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 30

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . 66

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed.Cir. 2007) . . . . . . . . . . . . . . . . 34

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) . . . . . . . . . . 16,17,19, 20

*Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365 (Fed. Cir. 2002) . . . . . 25

*Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*,
347 F.3d 935 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 50, 57

*Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 1952 (1969) . . . . . . . . 57, 60

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143 (Fed. Cir. 2003) . . . . . 17

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989
(Fed.Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243
(Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302
(Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

*Rosen v. Communication Services Group, Inc.*, 155 F.Supp.2d 310 (E.D.Pa.
2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493 (11th Cir.
1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368 (Fed. Cir. 2006) . . . . . . . . 62, 65

*Sekhon v. BAC Home Loans Servicing LP*, 519 Fed.Appx. 971 (9th Cir.
2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 607 F.3d 784
(Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp.2d 978
(W.D. Tenn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62, 64

*Smith v. Governor for Alabama*, 562 Fed.Appx. 806 (11th Cir. 2014) . . . . . . . . . 40

*Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, (Fed. Cir. 1983) . . . . . . 66

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988) . . . . . . . . . 17

*Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568 (Fed. Cir. 1990) . . . . . . . . 68

*Tambourine Comercio Internacional SA v. Solowsky*, 312 Fed.Appx. 263 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Totes-Isotoner Corp. v. U.S.*, 594 F.3d 1346 (Fed. Cir. 2010) . . . . . . . . . . . . . . 53

*TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333 (Fed. Cir. 2010) . . . . . . . . . . . . . 35

*U.S. v. Thomas*, 553 Fed.Appx. 941 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . 40

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Verizon Services Corp. v. Cox Fibernet Virginia, Inc.*, 602F.3d1325 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) . . . . . . . . . 25

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48, 51, 56, 57

*Volcan Group, Inc. v. Omnipoint Communications, Inc.*, 552 Fed.Appx. 644 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Wind Tower Trade Coalition v.U.S.*, 741 F.3d 89 (Fed. Cir. 2014) . . . . . . . . . . . 58

*Windsurfing Intern. Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed. Cir. 1986) . . . . . . . . . 65

*Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 39

*Young v. U.S.*, 535 U.S. 43, 122 S.Ct. 1036 (2002) . . . . . . . . . . . . . . . . . . . . . . 54

## RULES

Fed.R.Civ.P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Fed.R.Civ.P. 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 46, 47, 63, 69

Fed.R.Civ.P. 58 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 42, 46

Fed.R.Civ.P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62, 63, 67

## STATUTES

28 U.S. C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40, 43, 44, 45, 58

28 U.S. C. § 2202 . . . . . . . . . . . 39, 40, 43, 45, 46, 47, 48, 56, 57, 58, 59, 63, 69

35 U.S. C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

35 U.S. C. § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

35 U.S. C. § 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

35 U.S. C. § 154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

35 U.S. C. § 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59, 60, 61, 67

35 U.S. C. § 284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

## MISCELLANEOUS

10 WRIGHT, MILLER, & KANE, Federal Practice and Procedure, § 2771 . . . 57

M.P.E.P. § 2173.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## STATEMENT OF RELATED CASES

This appeal relates to two other actions currently pending in the United States District Court for the Middle District of Florida captioned *Saeilo, Inc., etc., et al, v. Diamondback Firearms, LLC*, Case No. 6:12-cv-793-orl-28-DAB and *Saeilo, Inc., etc., et al., v. Diamondback CNC, LLC, et al.,* Case No. 6:13-cv-198-Orl-36-DAB.

# I.    JURISDICTIONAL STATEMENT

Kahr concurs with and adopts the citations of authority given by Diamondback as to the Court's jurisdiction over this matter.  Kahr's notice of cross appeal was timely filed on March 6, 2014 pursuant to Rule 4(a), Fed. R. App. P., within fourteen (14) days of the Notice of Appeal filed herein by Diamondback.

# II.    STATEMENT OF THE ISSUES

In addition to those set forth in Appellant's principal brief, the following additional issues are presented on cross-appeal:

1.    Whether the district court erred in entering a form of final judgment in this case that did not fully adjudicate the rights of the parties nor incorporate the jury's explicit findings.

2.    Whether the district court erred in denying Kahr further relief as provided for under 28 U.S.C. §2202.

3.    Whether the district court erred in declaring Kahr's prayer for relief as insufficient to state a claim for relief in this case.

# III.    STATEMENT OF THE CASE

## A.    Nature of the Case

Kahr disputes Diamondback's statement of the "nature of the case" as being

argumentative. This case is a declaratory relief action initiated by Diamondback

Firearms, LLC under 28 U.S.C. §2201 and §2202 seeking a declaration that

Diamondback's DB380 line of firearms did not infringe the '914 Patent and that the

'914 Patent was invalid. Kahr responded denying the allegations regarding non-

infringement and invalidity and included in its response a prayer for relief seeking

judgment finding that the '914 Patent was valid, that the DB380 line of firearms

infringed the '914 Patent, that the infringement was willful and awarding damages,

costs, attorneys' fees and such other relief as the court deemed proper. The case was

tried to a jury and on March 28, 2013. The jury rendered its verdict finding that the

DB380 line of firearms infringed the '914 Patent and that the '914 Patent was not

invalid under theories of anticipation or obviousness as argued by Diamondback.

### B.    Procedural History

Kahr likewise disputes Diamondback's recitation of the procedural history of

the case as being couched in argumentative terms. First, in each of its answers to

Diamondback's pleadings seeking declaratory relief under 28 U.S.C. §2201 and

§2202 Kahr included a prayer for relief seeking findings of validity of the '914 Patent

and infringement by Diamondback's DB380 firearms. In its Amended Answer to

Diamondback's Amended Complaint Kahr included a prayer for relief which sought

judgment finding that the '914 Patent was valid, that the DB380 line of firearms

2

infringed the '914 Patent, that the infringement was willful and awarding damages, costs, attorneys' fees and such other relief as the court deemed proper. A0071-75. Diamondback did not file any motion to dismiss or strike directed to these pleadings.

Contrary to Diamondback's assertions, the jury was not asked to define any claim terms in this case. Rather, in accordance with Kahr's argument that the claim terms sought to be improperly limited by Diamondback were clear on their face, the district court rejected Diamondback's proposed meaning of certain claim terms thereby resolving the dispute. A0527-545. The jury was instructed to give the language of the claims their common meaning [A1510] and contradictory arguments or evidence as to Diamondback's rejected construction was not permitted.

Kahr supplements the procedural history of the case as follows. Late in 2011, after the deadline to amend pleadings under the district court's case management order, Kahr became aware that Diamondback was distributing two other lines of firearms, the DB9 and DB320, which also infringed the '914 Patent. Kahr moved to amend its pleadings to bring these two additional lines of firearms into this case. A1640-78. The district court denied that motion for leave to amend. A1679-80; A1703. Thereafter, in ruling on Kahr's motion to compel discovery from Diamondback on the issue of damages the district court went further ruling that the prayer for relief included in Kahr's Amended Answer to Diamondback's Amended

Complaint was insufficient to state a claim for any relief and that Kahr had waived its right to seek any relief in this 28 U.S.C. §2201 and §2202 proceeding. A1728-32; A1763.

After the jury rendered its verdict in this case a general form of judgment was initially entered by the district court. A1556-58. However, upon Kahr's motion to alter or amend the judgment [A1809-11] the district court agreed that given the nature of the jury verdict Rule 58(b)(2) the Court is required to approve a form of judgment for entry by the Clerk. A1826-34. Thereafter, it directed entry of a specified form of verdict which limited its declaration of the rights of the parties to merely a declaration that Diamondback was not entitled to a declaratory judgment of non-infringement or invalidity and did not include the findings of the jury in its verdict. *Id.*; A1553.

In addition, the district court denied Kahr any further relief under 28 U.S.C. §2202 based on its previous finding that the prayer for relief included in Kahr's Amended Answer was insufficient to state a claim for any relief and, consequently, Kahr had waived its right to seek any relief in this 28 U.S.C. §2201 and §2202 proceeding. A1813-34.

On March 6, 2014 Kahr timely filed its notice of cross appeal. A1879-80.

**C.    Rulings for Review**

The rulings at issue under Kahr's cross appeal are as follows:

Order Denying Defendants' Motion for Leave to Amend to Add Counterclaim dated January 24, 2012 [A1679-80];

Order Denying Appeal and Affirming Order Denying Defendants' Motion for Leave to Amend to Add Counterclaim dated April 26, 2012 [A1703];

Order Denying Motion to Compel Documents dated April 30, 2012 [A728-32];

Order Denying Appeal and Affirming Order Denying Motion to Compel Documents dated June 6, 2012 [A1763];

Trial ruling regarding exclusion of evidence of damages rendered on March 27, 2013 [A0754-55];

Judgment dated March 28, 2013 [A1556];

Oral Order Denying Motion for Permanent Injunction rendered on October 10, 2013 [A0016-17];

Minute Entry dated October 10, 2013 [A0016-17] and Order dated February 6, 2014 [A1764-90] as they pertain to the Motion to Alter Judgment [A1809-11].

Amended Judgment in a Civil Case [A1881].

## IV.   **RELEVANT FACTS**

Kahr disputes the statement of relevant facts presented by Diamondback in its principal brief in two respects. First, at the end of subsection (2)(a) titled "The 'Uncocked' or 'Striking' Position" Diamondback asserts that in the "uncocked" position described in the '914 Patent there is no spring pressure on the firing mechanism. This is not an established fact in the case and is not an interpretation

supported by the language of the claims contained in the '914 Patent. This is simply argument and not a statement of fact in the record.

Second, in section (3) Diamondback asserts that the declarations of the two experts submitted by Kahr in response to the motion for claim construction were conflicting and gave different interpretations of the term at issue. The declarations in the record speak for themselves and this is a statement of opinion and argument, not a statement of record fact. The fact that the district court relied on these declarations and cited to them in rejecting Diamondback's proposed limitations on the claims language refutes Diamondback's assertion on this point. A0527-45.

Kahr supplements the statement of relevant facts as follows. Kahr was the exclusive licensee of the '914 Patent, issued April 2, 1996. A0970. The owner of the '914 Patent is its inventor and Kahr President, Kook Jin Moon. A0076. The '914 Patent, one of several applicable to Kahr's line of firearms, was addressed to a rotating cam cocking and release mechanism for a striker fired firearm. A0076-86. Sometime in late 2010 Kahr became aware that Diamondback Firearms, LLC ("Diamondback") was manufacturing a .38 caliber firearm line generally referred to as the DB380 series which appeared to employ the patented rotating cam cocking and release mechanism used by Kahr. A0971-73. As a consequence Kahr sent Diamondback a letter in September of 2010 asking that it respond and explain its

position as to why the DB380 firearms were not infringing upon the '914 Patent. *Id.* Rather than respond to that letter Diamondback filed suit under 28 U.S.C. §2201 and §2202 seeking a declaration that its DB380 firearms did not infringe the '914 Patent and/or a declaration that the '914 Patent was invalid. *Id*; A0019-41; A0047-70. Kahr answered the claims for declaratory relief in Diamondback's Amended Complaint, stating its opposition to the claims, and requesting affirmative relief by way of judgment finding that the '914 Patent was valid, that the DB380 line of firearms infringed the '914 Patent, that the infringement was willful and awarding damages, costs, attorneys' fees and such other relief as the court deemed proper. A0071-75. Diamondback filed no motion to dismiss, to strike or other paper directed to these pleadings.

Subsequent to the deadline for the amendment of pleadings established by the district court's case management order entered on March 14, 2011 and just prior to mediation which took place on October 27, 2011, Kahr became aware of a new firearm offered by Diamondback referred to as the DB9. A1640-78. Kahr believed this firearm might also employ the rotating cam device which is the subject of the '914 Patent. *Id.* Further testing on a DB9 obtained thereafter confirmed that the same rotating cam cocking device covered by the '914 Patent was being used by Diamondback to produce its DB9. *Id.*

7

Diamondback did not begin distributing and selling this weapon until after the deadline for amending the pleadings in this case on May 11, 2011. According to an internet posting the first shipment of DB9s occurred on May 17, 2011 and only 170 DB9s were shipped by May 25, 2011. A1662-69.

Diamondback did not reveal the cocking system used in the DB9 in discovery propounded in this case. In interrogatories propounded to Diamondback in April of 2011, Kahr asked Diamondback to describe the differences between its various DB380 models and any other firearm they offered for sale, including any differences in the firing mechanisms. Diamondback's answers served on or about May 9, 2011 did not reference the DB9, but in general objections set out in the beginning of the answers, Diamondback refused to produce or provide any information regarding the DB9 which they stated was ". . . a firearm not accused of infringement." A1670-78.

By motion for leave to amend filed on January 10, 2012, Kahr sought to bring the DB9 and another subsequently discovered firearm, the DB320, into this case. A1640-78. The district court denied that motion for leave to amend. A1679-80; A1703. Thereafter, in ruling on Kahr's motion to compel discovery from Diamondback on the issue of damages the district court ruled that the prayer for relief included in Kahr's Amended Answer to Diamondback's Amended Complaint was insufficient to state a claim for relief and that Kahr had waived its right to seek any

8

relief in this 28 U.S.C. §2201 and §2202 proceeding.  A1728-32; A1763.  It is undisputed that Diamondback was aware of Kahr's claims for relief, including damages, and Diamondback questioned Justin Moon regarding the relief Kahr was seeking in his deposition taken on September 22, 2011.  A1421-22; 1432-36.

The case was tried to a jury on the claims pled by Diamondback under 28 U.S.C. §2201 and §2202.  In an interrogatory verdict form jointly submitted and agreed upon by the parties the jury found that the DB380 line of firearms infringed the '914 Patent and that Diamondback had not proved its theories of invalidity.  A1524-5.  However, the amended judgment ultimately entered by the district court does not contain the jury's findings, but rather simply denies Diamondback the specific relief it requested.  A1881.  In addition, based on its previous ruling that the prayer for relief included in Kahr's Amended Answer was insufficient to state a claim for relief and that Kahr had waived its right to seek any relief in this 28 U.S.C. §2201 and §2202 proceeding, the district court denied Kahr further relief under 28 U.S.C. §2202.  A1826-34; A764-90.

## V.    SUMMARY OF THE ARGUMENT

The district court below committed no error in its claims construction rulings. Diamondback tried to impose a meaning of the term "half-cocked" as used in the '914 patent which added improper limitations to the claims.  In fact, meaning of the term

9

"half-cocked" as actually defined in and used in the claims was plain on its face and required no further construction. Diamondback's proposed construction was not supported by the law governing construction of claims, the language of the claims themselves or the patent prosecution history. The trial court properly rejected Diamondback's proposed construction thereby resolving the dispute. The jury was not invited to choose between competing meanings offered by the parties as there was no evidence or argument regarding Diamondback's proposed construction presented at trial.

Furthermore, Diamondback was not entitled to judgment as a matter of law as to its claims that the '914 patent was invalid under theories of anticipation or obviousness. These are issues upon which Diamondback bore the burden of proof by clear and convincing evidence. Diamondback could not prevail on its assertion that Claim 12 of the '914 patent was anticipated by the Glock patent because the Glock patent did not disclose a second biasing means urging the cocking and releasing element of the firearm towards its first position. Instead, the biasing means in the Glock patent urged the cocking and releasing element in the opposite direction. Substantial record evidence supports the jury's verdict on this issue.

Diamondback likewise failed to meet its burden of proof by clear and convincing evidence on is claim that the '914 patent was invalid under a theory of

10

obviousness. Substantial, competent, record evidence showed that the combination of the Glock and Dunn patents failed to disclose all of the elements of the claims of the '914 patent at issue- neither disclosed a second biasing means urging the cocking and releasing element of the firearm towards its first position. Furthermore, there was no competent evidence of any motivation to combine the teachings of the Glock and Dunn patents and the evidence actually demonstrated it would be illogical to do so. Substantial competent record evidence supports the jury's verdict and Diamondback was not entitled to judgment as a matter of law.

However, reversible error was committed by the district court below in its rulings with respect to the relief available to Kahr in this 28 U.S.C. §2201, §2202 proceeding. Notwithstanding the clear mandate of Rule 54(c) and the legislative intent of 28 U.S.C. §2201, §2202, the trial court entered a final judgment that did not adjudicate the rights of the parties in this case and did not incorporate the jury's express findings. Simply stated, the Amended Final Judgment entered by the trial court effectively denied declaratory relief because it is limited to a finding that Diamondback was not entitled to a declaratory judgment of non-infringement or invalidity. This Amended Final Judgment is legally in error as it does not serve the purposes intended for an action for declaratory relief and does not comport with the requirements of Rule 54(c) governing the necessary content of final judgments. It

11

ignores and intentionally excludes the jury's specific findings of infringement.

This error in the content and form of the final judgment stems from the trial court's misinterpretation of the law concerning compulsory counterclaims in declaratory relief actions and the further relief provisions of 28 U.S.C. §2202. Earlier in the case the trial court, *sua sponte*, deemed Kahr's requests for affirmative relief contained in its pleadings to be insufficient to entitle them to any relief whatsover in this 28 U.S.C. §2201, §2202 proceeding and, further, that any relief for infringement of the '914 patent had been waived. This ruling was an error of law as to the proper interpretation of rulings of this Court and 28 U.S.C. §2201, §2202. This error was compounded when, specifically in order to deny Kahr relief, the trial court improperly limited the scope of the final judgment it entered and precluded Kahr from seeking further relief in this case after the jury's verdict. These are substantial errors which severely prejudice Kahr's rights and remedies and must be reversed.

## VI.  ARGUMENT

### A.  The Trial Court Correctly Ruled That The Term "Half-Cocked" Required No Construction.

#### 1.  The term "half-cocked position" is defined by the language of the '914 Patent itself and is understood by the common meaning of the words used.

The claim language which Diamondback sought to improperly limit in order

to avoid a finding of infringement is that part of the '914 Patent which describes the position of the striker of the firearm in: ". . . a half-cocked position intermediate said fully cocked position and said striking position . . .." Diamondback urged a highly constrictive construction of this plain language to require that: (1) "half-cocked" must mean the mathematical mid-point of the travel of the striker within the firearm; and, (2) the striker be under partial spring compression at this position. A0243. This proposed construction was specifically tailored to try to avoid a finding of infringement. This proposed construction of the plain claim language ignored the common meaning of the term "half-cocked" to one of ordinary skill in the art and the context of the claim itself that locates this position as "intermediate" the fully cocked and striking positions - *i.e.*, simply ***between*** those two points. The language is plain on its face and required no construction by the court. The trial court rejected Diamondback's proposed construction and, as urged by Kahr, the jury was instructed to give the claims language its common meaning.

Diamondback's attempts to recast bits and pieces of testimony it elicited at trial itself fail to address the simple fact that the term "half-cocked position" is defined by the language of the '914 Patent itself - "intermediate said fully cocked position and said striking position." Diamondback tirelessly ignores the word "position" and focuses only on the term "half-cocked" divorced from the context in which it is used.

13

This attempted gerrymandering of the plain and clear language of the patent was flatly rejected by the trial court as not supported by the '914 Patent nor the evidence submitted. There was no unresolved dispute as to the plain meaning of the terms used and, therefore, no need for a construction by the trial court. The trial court accordingly precluded Diamondback from arguing its theory of the meaning of the term "half-cocked" to the jury.

Diamondback leans heavily on this court's ruling *in O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co. Ltd.*, 521 F.3d 1351 (Fed.Cir. 2008) to support its assertion that the trial court erred in not construing the term "half-cocked" beyond it plain and ordinary meaning. However, circumstances were substantially different in that case. In *O2 Micro Intern. Ltd.* the parties disputed not the meaning of the words themselves, but the scope that should be encompassed by the claim language at issue. *Id.* at 1361. Here, Diamondback sought to redefine the words themselves. Furthermore, the trial court in *O2 Micro Intern. Ltd.* improperly allowed the parties to argue their contrasting positions to the jury. *Id.* The trial court here made no such error. It resolved the dispute by rejecting Diamondback's efforts to redefine the language, precluded it from arguing its unsupported definition to the jury and appropriately instructed the jury to accord the language of the patent its ordinary meaning.

Notably, Diamondback ignores this Court's more recent ruling in *Finjan, Inc.*

*v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010), a case much more akin

to this one. As here, in *Finjan* the parties offered competing definitions of a claim

term. While the patentee asserted that the language had ordinary meaning within the

context of the claim (just as Kahr did here), the defendant sought to impose a

narrower definition. *Id.* at 1206. As here, the trial court in *Finjan* rejected the

defendant's proposed construction holding that it would unjustifiably narrow the

term's broad scope, which was not explicitly limited or redefined by the specification.

*Id.* The district court did not construe the term at issue for the jury but rather, as

here, instructed the jury to give the words of the claims their plain and ordinary

meaning. *Id.* at 1206-07. The district court further precluded the defendant from

offering evidence in support of its proposed construction at trial, as did the district

court in this case. *Id.* at 1207. In affirming the district court's ruling this Court held

that the trial court had resolved the parties' dispute as to the claims language by

rejecting defendant's proposed construction and that no further guidance to the jury

was required citing "*Verizon Services Corp. v. Cox Fibernet Virginia, Inc.*,

602F.3d1325, 1334 (Fed. Cir. 2010) (finding no O2 Micro violation where the parties

"did not invite the jury to choose between alternative meanings")." *Id.*

Consistent with *Finjan*, the trial court here resolved the dispute regarding the

meaning of the claim terms by rejecting Diamondback's proposed construction and directed the jury to give the language of the claims its ordinary meaning. The issue was not submitted to the jury with alternatives from which to choose. The trial court committed no error in its findings and instructions to the jury.

### 2.    The District Court correctly rejected Diamondback's proposed construction.

This Court has clearly delineated the process by which claims are to be interpreted. The claim language remains the primary focus of claim construction, setting the scope of the claims themselves. *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1315 (Fed. Cir. 2006); *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1302 (Fed. Cir. 2005); *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1347 (Fed. Cir. 2001). More importantly, a court may not import unnecessary limitations from the written description into the plain language of the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Though claim language cannot be completely divorced from the written description, it is the function of the claims, not the written description, to delimit the right to exclude. *Phillips*, 415 F.3d at 1323. A court may consult the written description, but the court may only do so to define a term already

in a claim limitation. *Renishaw PLC*, 158 F.3d at 1248. It is not proper to insert unnecessary limitations into a claim that is otherwise unambiguous. *Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2011); *Phillips*, 415 F.3d at 1323; *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003); *Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001); *Renishaw PLC*, 158 F.3d 1243; *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998).

It is a fundamental theme of claim construction that "a claim must explicitly recite a term in need of definition before a definition may enter the claim from the written description." *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330-31 (Fed. Cir. 2007) citing *Renishaw PLC*, 158 F. 3d at 1248. Consequently a court should not narrow an otherwise broad claim by reading unnecessary limitations into the plain language of the claim. *Arlington Industries, Inc.. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1256 (Fed. Cir. 2011); citing *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988). As this court held in *Phillips*, a court can discern the line between construing terms and importing limitations from the written description by focusing on how a person of ordinary skill in the art would understand the claim terms. *Phillips*, 415 F.3d at 1323.

a)    **The claims and specifications do not support the definition proposed by Diamondback.**

The first aspect of Diamondback's proposed claim construction of the term "half-cocked" referred to the specific physical location in terms of the operation of the firearm.  To argue in favor of the "midpoint position of the travel of the striker" Diamondback urged dissection of "half-cocked" into "half" and "cocked," thereby rendering the term of art an oversimplified amalgamation of common English words. This ignored the plain language of the claim itself which clearly defined the position of "half-cocked" - intermediate the fully cocked and striking positions.  The term "intermediate" is clear and unambiguous and Diamondback never sought construction of that term.  Consequently, the position of "half-cocked" as recited in the claims of the '914 Patent is clear and unambiguous, raising no requirement for construction by the trial court.

In addition, Diamondback also asserted that in the "half-cocked" position, the striker must be under partial spring compression.  Nowhere in the written description does the patent define the "'half-cocked position' [as] the midpoint position of the travel of the striker, with partial striker spring compression" as urged by Diamondback.  A0243.  The additional limitation concerning spring compression would also unnecessarily narrow the scope of the claims at issue and contravene the

plain language of the claim.

"Half-cocked" is a unique term that one of ordinary skill in the art would not view as an amalgamation of the words "half" and "cocked." As understood by one of ordinary skill in the art "half-cocked" is the position of the hammer of a small arm weapon when it is held by the first cocking notch, with the trigger locked and the weapon relatively safe. The written description of the '914 Patent describes the "half-cocked" position as a configuration in which the striker does not "possess enough energy, in theory, to detonate the primer if it releases at that point." A0084. This description includes nothing about spring compression or a location at the midpoint of the striker travel. The claims at issue are unambiguous as viewed by one of ordinary skill in the art and the trial court was correct not to narrow the meaning of "half-cocked."

Given the importance of claim language, it naturally follows that courts should eschew considering extrinsic evidence that contradicts unambiguous claim language. *Phillips*, 415 F.3d at 1324. Though courts are not barred outright from considering extrinsic evidence, extrinsic evidence should never be used to contradict the plain meaning of the claims. *Id.* As extrinsic evidence is gathered for the purpose of litigation, it is typically less reliable than the patent and prosecution history. *Id.* at 1318. Though a court is not absolutely prohibited from consulting a general

dictionary, it is error to stray from the four corners of the patent where doing so would render ambiguous a term commonly understood by a person of ordinary skill in the relevant art. *Id.* at 1312-1313. Like Judge Leventhal's criticism of legislative history, potential relevant extrinsic evidence is boundless. *Id.* at 1318. A litigant may search through a wide spectrum of sources to find favorable evidence which contravenes unambiguous claim language. *Id.*

Claim terms are not interpreted in a vacuum, devoid of the context of the claim as a whole. *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999). Here, the context within which the term "half-cocked" is recited conclusively supports the trial court's ruling. Nothing within the pages of the '914 Patent dictates or even suggests that there must be energy imparted to the striker in the half-cocked position, let alone via spring compression. Claim 1 requires that the striker be movable to a "half-cocked position intermediate said fully-cocked position and said striking position." The claim includes no further limitation on "half-cocked" and none is needed - the striker simply must be located intermediate the other two respective positions. Diamondback urges the conclusion that "half-cocked" suggests energy imparted to the striker via spring compression without citing any supporting claim language whatsoever. Instead, Diamondback tries to improperly import this limitation from the figures in the patent and extrinsic evidence. To do so, however,

would violate a cornerstone of patent claim construction and unnecessarily limit the scope of the claimed subject matter.

Diamondback argues that in order for the cocking and releasing element to engage and maintain the striker in the half-cocked position, there must be striker spring pressure in the half-cocked position that would otherwise push it to the uncocked or striking position. The '914 Patent discloses that "striker tongue 26 rests on the first cam lobe 22' of cam 22; and the cam 22 is prevented from rotating in a counterclockwise direction from its first position, in which it appears in FIG. 5, by an abutment surface 22" on the cam 22 which engages an arresting surface 25 on the frame back piece 36." The engagement of striker tongue 26 and first cam lobe 22' and the engagement of abutment surface 22" and arresting surface 25 clearly prevent movement of the striker in the direction towards the breech face. If the striker spring 28 and the spacer (the unlabeled structure shown in front of the striker spring 28 in Figures 2 and 3 of the '914 Patent) simply occupy the space between the front face of the slide back and the rear face of the striker bore, the presence of the striker spring 28 and the spacer will prevent movement of the striker in the direction away from the breech face with no compression of the striker spring 28. Accordingly, the cocking and releasing element will engage and maintain the striker in the half-cocked position when the striker spring does not apply pressure that would propel the striker to the

21

uncocked position.

Diamondback also argues that if there were no pressure on the striker, there would be no arresting surface, for the cocking element would not otherwise move forward beyond the position. The arresting surface 25 is a physical element of the frame back piece 36, as is clearly shown in Figure 5 of the '914 Patent. Tension on the striker spring is not what prevents the striker from moving freely into and out of the half-cocked position. Rather, the engagement of striker tongue 26 and first cam lobe 22' and the engagement of abutment surface 22" and arresting surface 25 clearly prevent movement of the striker towards the breech face and the striker spring 28 and spacer may prevent movement of the striker in the direction away from the breech face with no compression of the striker spring 28. Accordingly, Diamondback's arguments are meritless.

The '914 Patent does not require that springs 28 and 38 apply a force to either the cocking cam or the striker when they are in the half-cocked position, only that "the biasing forces of the springs 28 and 38 which exert counterclockwise biasing force on the cam . . . to retain the cam with its first cam lobe 22' in vertically oriented or striker blocking position." If spring 38 is un-tensioned when first cam lobe 22' is in the vertically oriented or striker blocking position and the cocking cam is rotated counter-clockwise (as viewed in Figure 4), it will be put under tension and thereby

22

exert a biasing force on the cocking cam to return first cam lobe 22' to the vertically oriented or striker blocking position and return spring 38 to the un-tensioned condition. Similarly, if spring 28 is uncompressed when first cam lobe 22' is in the vertically oriented or striker blocking position and the striker is moved away from the breech face, it will be compressed and thereby exert a biasing force on the striker to return it to the position where it abuts the spacer to return first cam lobe 22' to the vertically oriented or striker blocking position and return spring 28 to the uncompressed condition. Accordingly, springs 28 and 38 may operate as stated in Col. 4, lines 24-28, of the '914 Patent without the striker spring imposing pressure on the striker when the striker is in the half-cocked position.

Diamondback's arguments depend heavily on its interpretation of the Figures of the '914 Patent to support its proposed claim language. However, it is indisputable that : A) Patent drawings serve only an illustrative purpose and thus cannot define the precise proportions of the elements absent an explicit recitation of quantitative values in the written description. *Hockerson-Halberstadt, Inc. v. Avia Group Intern., Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000); B) It follows that if the written description is silent on the issue of proportion, a court should not impute specific limitations from the drawings. *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1148-49 (Fed. Cir. 2005); and, C) The specification of the '914 Patent is silent on the issue of proportion. The

23

drawings of the '914 Patent cannot be used to limit the striker to the approximate midpoint or include spring compression when the striker is in the half-cocked position.

### b)    Giving the claim terms their usual and customary meaning does not render any limitation mere surplusage or redundant.

Diamondback makes the same argument here that the trial court found to be without merit - that failure to adopt its proposed definition renders the terms "half-cocked position" and "intermediate said fully cocked and said striking positions" redundant and without meaning. The trial court correctly rejected this argument because the "intermediate" phrase itself defines "half-cocked position" as used in the '914 Patent. As the trial court noted, the inventor is describing where in his firearm the half-cocked position is located and the relative arrangement of the involved structures in that position. No further definition of "half-cocked position" was required beyond the definition given by the claim itself.

Diamondback's argument in this regard is internally contradictory. On the one hand it argues that "half-cocked" has no clear common meaning in the firearms industry, but then asserts that "half-cocked" and the phrase placing it intermediate the fully cocked and striking positions are synonymous or redundant. In point of fact, the "intermediate" phrase specifically defines "half-cocked" as it is used in the '914

Patent. If, as Diamondback argues, the term "half-cocked" has no ordinary or customary meaning, then the "intermediate" phrase was included by the inventor to define it acting, by implication, as his own lexicographer. *See, Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).

Furthermore, "no canon of [claim] construction is absolute in its application." *ERBE Elektromedizin GmbH v. Canady Technology LLC*, 629 F.3d 1278, 1286 (Fed. Cir. 2010). While claim differentiation may be helpful in some cases, it is just one of many tools used by courts in the analysis of claim terms and it is well recognized that surplusage may exist in some claims. *Id.* citing, *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1373 (Fed. Cir. 2002). Thus, even if Diamondback's argument could be given any credence there is still no need for any further construction (especially where it would necessarily import improper narrowing limitations into the broad scope of the claim). The trial court correctly rejected this argument as meritless.

### c) The prosecution history does not support Diamondback's proposed construction.

Contrary to Diamondback's argument, Kahr's interpretation of half-cocked does not render the term superfluous; it merely prevents the term from being

interpreted in an overly narrow manner. Diamondback is correct that the term "half-cocked" was added to the claims during prosecution of the application to overcome a prior art rejection. Nevertheless, construing "half-cocked" as defined by the claim iteself does not render the term superfluous as alleged by Diamondback.

Diamondback notes that the '914 Patent discloses that "the striker 24 does not possess, in theory, enough energy to detonate the primer if it releases at that point," where the "point" is the half-cocked position. Diamondback extrapolates from this disclosure that "a striker in the half-cocked position may not have sufficient energy to ignite the primer, for it is only storing half the potential energy as the fully-cocked position." However, the fallacy in this argument is Diamondback's rejected assumption that the striker spring must be compressed when the striker is in the half-cocked position. As shown previously, this simply is not the case.

The next leg of Diamondback's argument was that "[t]he inventor understood there to be spring compression in the half-cocked position: he described the striker being release[d] from the half-cocked position . . .. By its plain meaning, the striker must necessarily be restrained against a force in order to be released." However, there is no basis for Diamondback's conclusion. As recited in the claims of the '914 Patent, "said cocking and releasing element in said first position maintains said striker in said half-cocked position." The specification describes that the engagement of

26

striker tongue 26 and first cam lobe 22' and the engagement of abutment surface 22"
and arresting surface 25 prevents movement of the striker in the direction towards the
breech face.  The striker may be "released" from the half-cocked position if the striker
tongue 26 is released from engagement with the first cam lobe 22' and/or abutment
surface 22" is released from engagement with the arresting surface 25.  Once again,
Diamondback's tortured reasoning fails.

### 3.     There was no juror confusion as to the meaning of the claim terms.

Diamondback's recitation of supposed definitions given at varying points in
the testimony are purely misleading.  In his testimony, contrary to the excerpts
carefully plucked out of context by Diamondback, Mr. Bredbury clearly stated that
the '914 Patent itself defines the location of the half-cocked position:

> 11 Q Okay. Is there a description of the place in the
> 12 travel that is in the '914 patent?
> 13 A Yes.
> 14 It tells you in the '914 patent that when you're in
> 15 the half-cocked position, it's some intermediate position
> 16 between fully forward, which is the fired position -- which
> 17 we saw with the firing pin tip sticking out of the breech
> 18 face -- and the fully cocked position in which the firing
> 19 pin spring is squeezed as tight as it'll -- it's going to
> 20 go.

21 Q All right. And so it's anywhere in that range?

22 A Yes.

A1048 [35:11-22]. Rather than modifying that testimony as Diamondback suggests, Mr. Bredbury clearly stated that the half-cocked position can be anywhere in the range between the opposing end points of the striker travel and never wavered on that point. Mr. Bredbury's testimony, read in context, is perfectly consistent with the definition of the location of the half-cocked position contained in the '914 Patent and was in no way misleading to the jury. Notably, the testimony Diamondback now points to as evidencing error was received ***without objection***.

Diamondback's complaints about testimony Mr. Bredbury offered under cross-examination are particularly unpersuasive. The assertion that Mr. Bredbury inserted a limitation ("the abutment," pg. 45 of Diamondback's brief) is inaccurate since Diamondback's counsel actually inserted that limitation, not Mr. Bredbury, inside his leading question. A1125 [112:1-3]. The remaining two examples of supposed "definitions" given by Mr. Bredbury during cross-examination are not such, but rather Mr. Bredbury's explanation of how the '914 Patent encompasses designs that may locate the half-cocked position in varying positions within the stated range.

Moreover, to the extent Diamondback's argument is based on answers it elicited by its own questions on cross examination it cannot be heard to complain.

*See, A.E. By and Through Evans v. Independent School Dist. No. 25, of Adair County, Okl.*, 936 F.2d 472, 476-77 (10th Cir. 1991)(testimony elicited by questions asked by the appellant itself at trial may not be used to allege reversible error on appeal). There has been no demonstration as to how the testimony cited is contradictory, much less how it could have been used to mislead the jury.

### 4.    The trial court correctly denied JMOL as to invalidity for indefiniteness.

Because claims delineate the patentee's right to exclude, the patent statutes require the scope of the claims to be sufficiently definite to inform the public of the bounds of the protected invention, *i.e.*, what subject matter is covered by the exclusive rights of the patent. *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). Claims are indefinite if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120,2124, 189 L.Ed.2d 37 (2014). "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable. The standard we adopt accords with opinions of this Court stating that 'the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter.'" *Id.* at 2129.

29

To prevail on a defense of indefiniteness the accused infringer must show that a skilled artisan could not discern the boundaries of the claim based on: (1) the claim language; (2) the specification; (3) the prosecution history; and (4) her knowledge of the relevant art. *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d at 1249 - 50. Further, an accused infringer must prove indefiniteness by clear and convincing evidence. *Id.* Diamondback failed to meet this rigorous standard of proof.

While the term "half-cocked position" does not have a specific, widely accepted meaning in the firearms industry, the limitation "half-cocked position" is sufficiently definite as used in the claims of the '914 Patent. As discussed above, the claims themselves specifically define the "half-cocked position" as being "intermediate" the "fully-cocked" and "striking position." There can be no dispute regarding the definiteness of the claims, since the meaning of each of "intermediate," "fully-cocked" and "striking position" is indisputable.

Diamondback's argument here conflates the issue of "half-cocked" as it is used in the claims of the '914 Patent, and how the term "half-cocked" is used across all firearms in the industry. The claim language remains the primary focus of claim construction, setting the scope of the claims themselves. *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1315 (Fed. Cir. 2006); *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1302 (Fed. Cir. 2005); *Crystal*

*Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336, 1347 (Fed. Cir. 2001). Though patent claim language must be sufficiently definite to satisfy 35 U.S.C. §112, there is no mandate that a claim recite precise measurements for each element recited.

> . . . [P]atentable inventions cannot always be described in terms of exact measurements, symbols and formulae, and the applicant necessarily must use the meager tools provided by language, tools which admittedly lack exactitude and precision. If the claims, read in the light of the specifications, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more.

*Georgia-Pacific Corp. v. U. S. Plywood Corp.*, 258 F.2d 124, 136 (2d Cir. 1958).

The fact that allowing the "half-cocked position" to fall anywhere between the "fully cocked" and "striking" positions allows for many variations in the location of that position among different firearm designs does not render it indefinite. While the claim language may be broad, such breadth is not equivalent to indefiniteness. *M.P.E.P. §2173.04* reciting *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009) (finding that claims reciting a crystal having over 5000 possible permutations were not indefinite).

Diamondback's arguments regarding indefiniteness are simply without merit.

**B.     The Court Correctly Denied JMOL On Invalidity As The Invention Embodied In The '914 Patent Was Neither Anticipated Nor Obvious.**

        **1.     The Glock patent does not anticipate Claim 12 of the '914 Patent because it does not disclose a second biasing means urging the cocking and releasing element toward its first position.**

Diamondback repeats its primary argument at trial that Claim 12 of the '914 Patent is anticipated by the '889 Glock patent.  A prior art reference anticipates a patent claim under 35 U.S.C. §102(b) only if it discloses each and every claim limitation.  *In re Montgomery*, 677 F.3d 1375, 1379 (Fed. Cir. 2012).  The anticipatory reference must also disclose the arrangement of all the elements as recited in the challenged claims.  *Id.*  Under 35 U.S.C. §102, courts use the all-elements test to determine if a patented device is anticipated.  *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002).  The all-elements test is a test of strict identity, requiring that a single prior-art reference teach all the elements recited in the claim, in exactly the same structural arrangement.  *Id.*  Anticipation must be proven by clear and convincing evidence.  *Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1383 (Fed. Cir. 2011).  The jury correctly rejected Diamondback's anticipation argument,

Diamondback's contention that Glock discloses every element recited in Claim

32

12 ignores the plain language and content of the '914 Patent as compared to the express teaching of the Glock patent. Claim 12 recites "a second biasing means for urging said cocking and releasing element towards its first position." The first position of the cocking and releasing element is that in which the striker is held in the "half-cocked position." As Mr. Bredbury explained, this means that the cocking and releasing element is being urged against the forward arresting surface. A1068-70[55:21-57:5]. By contrast, the Glock patent discloses that the biasing means does not urge the cocking and releasing element towards its first position, however. Rather, in the Glock patent, the biasing means urges the cocking and releasing element in the opposite direction toward a releasing position and a rear arresting surface. A1069-72[56:9-59:4].

Diamondback persists in its contention that the spring 106 in the Glock patent is the "second biasing means" as recited in Claim 12. However, the spring 106 in the Glock patent does not urge the cocking and releasing element to its first position either. Mr. Bredbury explained, the spring 106 merely moves the lever in the Glock firearm upward and downward, and it does so whether the lever is in its first position or second position. A1072-74[59:5-61:13]. It does not urge the cocking and releasing element to its first position as in the '914 Patent and, therefore, the Glock patent does not "anticipate" Claim 12.

33

Diamondback clearly failed to meet its burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence requires more than a mere preponderance of the evidence and entails proof that a claim is highly probable. *Tambourine Comercio Internacional SA v. Solowsky*, 312 Fed.Appx. 263, 276 (11th Cir. 2009). The jury's verdict that Claim 12 is not anticipated by the Glock reference is entitled to substantial deference. No reviewing court may disregard the fact that the jury believed the testimony of Mr. Bredbury and gave it greater weight than that of Diamondback's expert. Specifically, the court may not substitute its own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1997). This is precisely what Diamondback is insisting the trial court should have done. Substantial competent record evidence supports the jury's verdict and no judgment as a matter of law could have been properly granted.

### 2.    Diamondback failed to prove obviousness by clear and convincing evidence and the record contains substantial competent evidence to support the jury's verdict.

Generally, a party seeking to invalidate a patent as obvious must "demonstrate 'by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.' " *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed.Cir.2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361

(Fed.Cir.2007)). *See also Amgen, Inc. v. F. Hoffman–La Roche Ltd.*, 580 F.3d 1340, 1362 (Fed.Cir.2009) ("An obviousness determination requires that a skilled artisan would have perceived a reasonable expectation of success in making the invention in light of the prior art.") (citations omitted).

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 676 F.3d 1063, 1068 - 69 (Fed. Cir. 2012). Whether the claimed invention would have been obvious at the time of invention to one of ordinary skill in the art is a question of law based on underlying facts. *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010).

When analyzing the non-obviousness of a patent, a reviewing court must balance two countervailing interests. On one hand, the court must "prevent withdrawal of that which is already known into the field of a patent's monopoly, thereby diminishing the resources available to skillful men." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007); citing *Great Atlantic & Pac. Tea Co. v. Supermarket Equipment, Corp.*, 340 U.S. 147, 152-53 (1950). The courts must protect ideas and concepts in the public sphere, and invalidate patents directed to obvious improvements over the prior art. On the other hand, "it is improper to take concepts from other devices and change them in light of the now-known template in the patented device, without some direction in the prior art that would render it

obvious to do so." *Daiichi Sankyo, Co., Ltd. v. Matrix Laboratories, Ltd.*, 619 F.3d 1346, 1354 (Fed. Cir. 2011). Hence the axiom that a reviewing court must not engage in "hindsight bias" and use ex post reasoning to invalidate patents that recite claims to truly innovative inventions. Even though the obviousness analysis is flexible and open-ended, a court must still identify a reason that would have prompted a person of ordinary skill to combine the elements known in the art in the fashion the claimed invention does. *KSR*, 550 U.S. at 418.

**a)     The Glock and Dunn Patents together do not disclose every element of Claim 1 of the '914 Patent.**

As discussed above, neither the Glock nor the Dunn patent discloses a second biasing means which urges the cocking and releasing element towards its first position. The Glock patent discloses only a second biasing means which urges the cocking and releasing element in the opposite direction, while the Dunn patent does not have a cocking and releasing element, only a releasing element which serves no cocking function. Diamondback's argument that the claims of the '914 Patent are obvious must fail, at least for the reason that a second biasing means which urges the cocking and releasing element towards its first position is completely absent in the prior art.

b) **The Dunn patent fails to disclose the additional limitations of Claims 2-6, 8 and 12 of the '914 Patent.**

Mr. Bredbury gave detailed and comprehensive testimony with respect to each element of the claims of the '914 Patent.  A1076-1102[63:13- 89:25].  He provided a thorough explanation as to how the Glock and Dunn patents did not render each of the claims obvious.  His analysis, based on fact and a meticulous examination of the patents, contradicted Mr. Nixon's conclusory opinions.  Mr. Bredbury's analysis is demonstrably recorded in Defendants' Exhibit 19 entered into evidence without objection.  Mr. Bredbury opined that the combination of the Dunn and Glock patents failed to disclose all of the limitations of the claims of the '914 Patent.  Mr. Bredbury further testified that attempting to combine the teachings of the two was illogical from the standpoint of firearms design and from a pure engineering perspective.

3. **Substantial competent evidence shows that the combination of the Glock and Dunn Patents is illogical and in no way suggested by the Dunn Patent itself.**

Diamondback's expert cited three purported reasons for combining the Glock and Dunn patents - 1) Glock essentially combined the Glock and Dunn patents by copying Dunn's striker block safety mechanism; 2) the Dunn patent references the Glock patent in the Background of the Invention section; and, 3) to solve known problems in the technology. A0901-04[113:11-116-11].  As Mr. Bredbury explained

37

at length, none of these considerations provided any motivation to combine the Glock and Dunn patents. A1067-68[54:9-55:4]; 1076-78[63:13-65:14]. Diamondback seems to invoke "common sense" as the lynchpin of its theory of invalidity for obviousness. Mere recitation of the words "common sense" without any support adds nothing to the obviousness equation. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012). Mr. Nixon couched his opinions as to the obviousness of claims in the broadest possible terms, and without any technical or factual support. Conclusory statements that a claimed invention is obvious will not satisfy § 103. *KSR*, at 418, 127 S. Ct. at 1741, citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006). Lack of factual support for expert opinion going to factual determinations renders the testimony of little probative value in a validity determination. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 294 (Fed. Cir. 1985). Mr. Nixon provided no explicit reason why one of ordinary skill in the art would combine the Glock and Dunn patents. Nor did Mr. Nixon provide a rational basis upon which one of ordinary skill in the art would have had a reasonable expectation of succeeding in combining the Glock and Dunn patents. The jury's verdict is well-supported in the record, as Diamondback simply failed to prove obviousness by clear and convincing evidence.

## VII. CONCLUSION AS TO PRINCIPAL APPEAL

For the reasons set forth above, Diamondback's assertions of error are without support in the record or the law and the Court should grant Diamondback no relief in this proceeding.

## VIII. ARGUMENT AS TO ISSUES ON CROSS-APPEAL

### A. Applicable Standard of Review

Kahr's cross appeal seeks review of the district court's interpretation of the relief provided for under 28 U.S.C. §2201 and §2202 and the requirements of Rule 58 of the Federal Rules of Civil Procedure. These are matters of law which this Court may determine *de novo* without deference to the district court's interpretation. *Novartis AG v. Lee*, 740 F.3d 593, 598 (Fed. Cir. 2014); *Wyeth v. Kappos*, 591 F.3d 1364, 1369 (Fed. Cir. 2010). Kahr also challenges the district court's ruling that, as a matter of law, Kahr's prayer for relief was insufficient to state any cause of action or claim for relief in this 28 U.S.C. §2201 and §2202 proceeding and consequently, Kahr had waived the right to any relief. This Court has said that purely procedural matters not pertaining to patent law are reviewed in accordance with the rules of the regional circuit. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009). In the regional circuit here, the Eleventh, dismissal for failure to state a cause

39

of action whether upon motion or *sua sponte* are reviewed *de novo*. *Lewis v. Regional Director for Broward County*, 520 Fed.Appx. 932, 933 (11th Cir. 2013); *Losey v. Warden*, 521 Fed.Appx. 717, 719 (11th Cir. 2013). Finally, corollary to the rulings challenged above, Kahr challenges the rulings of the district court denying Kahr's motion for leave to amend to add the DB9 and DB320 line of firearms to this action and denying Kahr discovery as to damages and the right to present evidence as to damages at trial. These matters are reviewed for abuse of discretion. See, *Mack v. Mazzarella*, 554 Fed.Appx. 800, 804 (11th Cir. 2014); *Smith v. Governor for Alabama,* 562 Fed.Appx. 806, 811 (11th Cir. 2014); *U.S. v. Thomas*, 553 Fed.Appx. 941, 944 (11th Cir. 2014).

**B.    The Trial Court Erred in Entering an Amended Final Judgment in This Cause That Did Not Fully Adjudicate the Rights of the Parties Nor Incorporate the Jury's Explicit Findings**.

The Amended Final Judgment entered in this case by the trial court failed to fully adjudicate the rights of the parties in this case contrary to the requirements of law. In its Amended Complaint, Diamondback specifically invokes the district court's jurisdiction under 28 U.S.C. §2201 and §2202 seeking declarations from the trial court as to whether its DB380 series of firearms infringed the '914 Patent and whether the '914 Patent was invalid. Kahr filed its Amended Answer responding to

the allegations of the Amended Complaint and specifically praying for affirmative relief including a declaration as to the validity of the '914 Patent, a declaration as to the infringement of the '914 Patent by Diamondback's DB380 series of firearms, a declaration regarding the wilfulness of that infringement, a determination of enhanced damages, a determination as to entitlement to attorneys' fees and costs and such other relief as the trial court deemed proper.

The trial court took jurisdiction and submitted the issues for determination by jury. In accordance with applicable law Kahr, though not the plaintiff in the case, was required to prove that Diamondback's DB380 firearms infringed the '914 Patent. In an interrogatory verdict the jury found that the DB380 firearms distributed by Diamondback infringed claims 1-6, 8 and 12 as Kahr had asserted.

The trial court similarly submitted the issues of invalidity of the '914 Patent due to anticipation or obviousness for determination by the jury. Diamondback bore the burden of proof on these issues by clear and convincing evidence. In an interrogatory verdict the jury found that Diamondback had failed to meet its burden of proof as to either theory of invalidity.

A general final judgment was entered by the clerk without findings by the trial court. After granting Kahr's motion to amend or alter the final judgment the trial

court directed entry of an Amended Final Judgment which still did not fully adjudicate the rights of the parties in the controversy but only denied Diamondback a declaration in its favor on the issues presented. This Amended Final judgment does not meet the requirements of law for judgments in an action for declaratory relief.

"The judgment rendered in a declaratory suit comprises an authoritative judicial statement of the jural relationships between parties to a controversy." *Government Emp. Ins. Co. v. LeBleu*, 272 F.Supp. 421, 426 (D.C. La. 1967). Here, the Amended Final Judgment does not state the jural relationships between the parties in the controversy that was brought to the court. Instead, it constricts its findings to simple denial of relief ignoring the specific matters put to and decided by the jury. "Pursuant to Rule 58, in declaratory judgment actions, district courts must declare specifically and separately the respective rights of the parties, not simply state in a memorandum opinion, minute order, or a form prescribed for judgment in a civil case that a motion has been granted or denied." *Alpine State Bank v. Ohio Cas. Ins. Co.*, 941 F.2d 554, 558 (7th Cir. 1991). Rule 54(c) provides that every ". . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." In every answer filed by Kahr a demand was made for a declaration of the rights of the parties with respect to infringement and validity of the '914 Patent. Even if they had not, Rule 54(c) clearly requires that a

declaration of rights be set forth in the final judgment in this case. The jury made specific findings in response to interrogatory questions in the verdict and those findings must be set forth in the final judgment in this case.

Diamondback's response to the motion to alter or amend the final judgment at the trial level asserted that no specific findings were necessary as it contended that Kahr waived any claims in response to its request for declaratory relief. This matter will be addressed more fully below. However, with respect to a declaration of the respective rights of the parties the full gamut of those rights as to the matter in controversy is submitted to the court by submission of the issues under 28 U.S.C. §2201 and §2202.

> The Declaratory Judgment Act provides, in relevant part: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a) (emphasis added). Because of the Act's use of the word "may," the Supreme Court has held it confers upon courts the power, but not the duty, to hear claims for declaratory judgment . . . . In determining whether to exercise their discretion, district courts should consider the following factors:
>
> [1] whether a declaratory action would settle the controversy;
> [2] whether it would serve a useful purpose in clarifying the legal relations at issue;
> [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata;

43

[4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

[5] whether there is an alternative remedy which is better or more effective.

*Mid–Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980-81 (10th Cir. 2012); *Grand Trunk Western R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984). The Amended Final Judgment entered in this case fails to serve the applicable factors considered by the trial court in deciding to exercise its jurisdiction in this case.

First, it does not settle the controversy. As stated in the Amended Complaint filed by Diamondback, Kahr asserted that the DB380 line of firearms distributed by Diamondback infringed the '914 Patent and demanded any proof to the contrary. This is the essence of the controversy between the parties. The jury specifically found, in accordance with the trial court's instructions ***and the jury verdict form agreed to by the parties***, that Diamondback's DB380 firearms infringed the '914 Patent. The jury resolved the controversy submitted to it, yet the trial court refused to do so in its Amended Final Judgment. Rather, the trial court restricted the Amended Final Judgment to a finding that Diamondback was not entitled to a declaratory judgment of non-infringement. This does not settle the controversy as intended by 28 U.S.C. §2201. In essence, the trial court denied declaratory judgment after the jury verdict.

44

Further, the restricted Amended Final Judgment served no useful purpose in clarifying the legal relations at issue. The legal relations at issue were, as stated in Diamondback's Amended Complaint, the validity of the '914 Patent in light of claims of anticipation or obviousness and the infringement of the '914 Patent by Diamondback's DB380 firearms. The Amended Final Judgment did not resolve or clarify the issues in any meaningful way by simply rejecting Diamondback's right to relief.

Finally, the Amended Final Judgment serves the opposite purpose than that intended by the declaratory relief statute. It facilitates Diamondback's strategy of pressing a case forward in hopes of steamrolling the patentee whose patent is infringed. As demonstrated by the correspondence from Kahr to Diamondback regarding infringement of the '914 Patent Kahr sought to open discussions to try to resolve the issue short of litigation. Diamondback, however, declined to answer and jumped into litigation seeking declaratory relief. Though its tactics did not achieve its ultimate goal of a declaration of non-infringement and/or invalidity, these tactics also cost it little or nothing in the process. The Amended Final Judgment which simply recites that Diamondback is not entitled to relief it sought leaves open issues that have been conclusively decided by the jury verdict.

This result is not in keeping with the purpose and intent of §2201 and §2202.

45

Nor dies it comply with the requirements of Rule 54(c) which provides that every "...
final judgment should grant the relief to which each party is entitled, even if the party
has not demanded that relief in its pleadings." This Amended Final Judgment does
not conform to the Rule 58 requirement that in declaratory judgment actions district
courts must declare specifically and separately the respective rights of the parties.
Consequently, the Amended Final Judgment must be vacated and remanded for entry
of a final judgment consistent with the jury's express findings and allowing for
further relief as provided for under §2202.

### C.    The Trial Court Erred in Refusing to Grant Kahr Further Relief Under 28 U.S.C. §2202.

The district court's Amended Final Judgment was specifically designed to
preclude Kahr from seeking further relief under 28 U.S.C. §2202. This is made clear
by the trial court's exchange with counsel at the hearing on the issue.

> THE COURT: Well, really, let's cut to the chase here. I think you're
> right on this. The question is, what would be included in the judgment?
> And the problem -- the problem that you have, of course, is that there
> was never any counterclaim and the counterclaim you sought was for
> infringement and it was a compulsory counterclaim, right?

> MR. SPEARS: That's -- that's -- that's the ruling that the Court made.

> THE COURT: So then how can I then come back, notwithstanding the
> verdict, and it's a peculiar situation because in this situation the

defendant has the burden of proof even though it's the plaintiff's cause of action. So the verdict was really -- showing that you met the burden -- your burden of answering the plaintiff's motion for declaratory -- complaint for declaratory judgment. I can't grant you the relief that you -- I think you're seeking which is the infringement when in fact that was never sought.

A1826-27[15:21-16:13]. The district court held, notwithstanding the clear requirements of 28 U.S.C. §2202 and Rule 54(c), that its earlier *sua sponte* determination that Kahr's Prayer for Relief set forth in its Amended Answer was insufficient to state any claim meant that Kahr was barred from obtaining further relief under 28 U.S.C. §2202. This resulted from a misapplication of the law regarding compulsory counterclaims set forth in *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999) and *Capo, Inc. v. Dioptics Medical Products, Inc.,* 387 F.3d 1352 (Fed. Cir. 2004). These cases hold that a claim for infringement is a compulsory counterclaim in an action for declaratory relief which, if not brought, is waived. Certainly, these cases stand for the proposition that matters deemed to have been existing compulsory counterclaims in the declaratory relief action and not pled could not be later pursued *in a separate proceeding*. However, these authorities do not hold that the failure to plead the infringement counterclaim in a declaratory relief action bars the pursuit of further relief under 28 U.S.C. §2202 *in the same action*. In fact, this Court has expressly

47

commented on this in *Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935 (Fed. Cir. 2003). In *Polymer* the patentee pled no claim for infringement in response to a request for declaratory judgment of non-infringement. The jury determined that the product did infringe the patent. The patentee then filed a subsequent separate action for damages for the infringement. This Court repeated its admonition that a counterclaim for infringement is a compulsory counterclaim which if not made is deemed waived barring a subsequent separate action for infringement. However, this Court also noted that the patentee in that case ". . .could have requested the further relief it now seeks in the previous action following the jury verdict. *Id*. at 940. This is precisely what Kahr sought to do in this proceeding. The district court plainly misconstrued *Vivid Technologies* and *Capo* as barring Kahr from obtaining further relief under 28 U.S.C. §2202 in his case.

1.    **The trial court erred in declaring Kahr's Prayer for Relief as insufficient to state a claim for damages or other relief.**

The initial error committed by the trial court, compounded by its improper form of final judgement, was its treatment of Kahr's requests for relief in its pleadings and Kahr's efforts to amend its counterclaim once evidence came to light that Diamondback was distributing other lines of firearms, the DB9 and DB320, which also infringed the '914 Patent. Without any motion by Diamondback directed to the

48

sufficiency of Kahr's pleadings, in the face of Diamondback's acknowledgment of Kahr's pending claims for relief in its deposition examination of Kahr's president, Justin Moon, and without any opportunity afforded to amend any defect in its pleadings, the trial court declared Kahr's requests for relief a nullity and deemed all requests for affirmative relief waived. A1728-32. This *sua sponte* action of the trial court rendered this proceeding a mockery of Kahr's rights as a patentee under federal law.

Diamondback filed its Amended Complaint on May 13, 2011 seeking declaratory relief as to whether Kahr's '914 Patent was infringed specifically by the DB380 firearm distributed by Diamondback and, alternatively, whether Kahr's '914 Patent was valid. Kahr filed its initial answer to this amended pleading on May 26, 2011 and on June 9, 2011 amended its answer. A0071-75. The amended pleading includes a separately labeled request for affirmative relief as follows:

PRAYER FOR RELIEF

WHEREFORE, Kahr and Moon request that this Court adjudicate the rights of the parties and enter judgment as follows:

(a)    That Moon's Patent 5,502,914 is valid and enforceable;

(b)    That Diamondback's DB380 line of firearms infringe Patent 5,502,914;

(c)    That Diamondback willfully infringed Moon's Patent 5,502,914;

(d)    That the award of damages be trebled in accordance with 35 U.S.C. 284;

(e)    That Kahr be awarded their reasonable attorney's fees and costs; and

(f)    That such other relief as the Court may deem proper and necessary be so ordered.

A0074-75. It is important to note that Diamondback filed no motion, objection or other pleading directed to this claim for affirmative relief and damages.

In denying Kahr's motion to compel discovery related to Diamondback's sale of the DB380 firearms the trial court pronounced that Kahr's request for affirmative relief set forth in its amended answer was insufficient to constitute a counterclaim or any claim for relief whatever. In doing so the trial court looked at Kahr's pleading applying the standards it would on a motion to dismiss the pleading, though no motion to dismiss, to strike or otherwise addressing the pleading had been filed. In determining *sua sponte* that the pleading was insufficient to state a valid counterclaim or request for relief the trial court ignored the law, the circumstances of the case, applicable public policy and failed to even afford Kahr an opportunity to amend its pleadings. As noted above, this is a matter which this Court reviews *de novo*. *See also, Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d at 937.

### a.    The trial court's ruling violates public policy.

Here, the trial court, without any motion addressed to the sufficiency of the pleadings, applied the standards relevant to ruling on a motion to dismiss to Kahr's prayer for relief and deemed it insufficient, in essence a nullity, affording no opportunity to amend.  Kahr was precluded from presenting its claims on the merits. Public policy favoring disposition of cases on their merits must be considered by courts when dismissing a complaint be it on a motion addressed to its sufficiency or as a sanction for misconduct.  *See e.g., Sekhon v. BAC Home Loans Servicing LP*, 519 Fed.Appx. 971, 973 (9th Cir. 2013); *Volcan Group, Inc. v. Omnipoint Communications, Inc.*, 552 Fed.Appx. 644, 645 (9th Cir. 2014).  Without any pending motion challenging the pleading filed by Kahr, the trial court viewed the prayer for relief in a vacuum as if the allegations of the declaratory relief action had no bearing on whether the pleading sufficiently advised the adverse party of the nature of the claim.  A counterclaim for infringement in a declaratory relief action should not generally be disallowed.  *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999).  Indeed, this Court has granted a writ of mandamus to allow a counterclaim for damages in a declaratory relief action. *See, In re Laitram Machinery, Inc.*, 52 F.3d 343 (Fed. Cir. 1995).  Here, the trial court did precisely that, *sua sponte* rejecting Kahr's request for affirmative relief with no

51

motion directed to the pleadings pending and without affording Kahr opportunity to amend. The trial court misapplied the law in ruling that Kahr's claims for relief had been waived as to the DB380, the subject of this action for declaratory relief.

        **b.**      **Diamondback was fully on notice regarding the ultimate facts at issue and that Kahr was seeking relief, including damages.**

"[T]he purpose of pleading is to give notice rather than to provide those details of the issues and evidence which would eventuate at trial." *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 665 (S.D. Fla. 1999). The facts underlying the dispute between the parties was already well-defined by the basic allegations of Diamondback's Amended Complaint leaving any further pleading of facts by Kahr superfluous. The Amended Complaint identified all of the parties and their capacities; identified and attached the '914 Patent which was at issue; recited that Kahr claimed to own the '914 Patent and its accusation that Diamondback was infringing; pled the nature of the dispute between the parties as to the application of the patent to the allegedly infringing devices and construction of certain claim terms used in the patent; and, recited the presence of a substantial controversy between the parties having adverse legal interests. These same basic facts support Kahr's Prayer for Relief for declaratory judgment, a finding of infringement and damages. What more need be alleged? Furthermore, if in the judgment of the trial court additional

facts did need to be alleged, how is it Kahr can be denied the opportunity to amend its pleading to mirror those facts already pled? The district court's ruling here elevates form over substance to the extreme prejudice of Kahr. Certainly, with respect to pleadings, the courts will look to substance rather than form. *Totes–Isotoner Corp. v. U.S.*, 594 F.3d 1346, 1355 (Fed. Cir. 2010); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252-53 (11th Cir. 2005).

Plaintiff acknowledged that it was aware of Kahr's claims for relief in the Prayer for Relief in Kahr's answer. Diamondback pled with specificity, the underlying facts of the dispute. During the deposition of Justin Moon Diamondback specifically inquired as to the relief Kahr sought, referring specifically to the prayer for relief, and the basis for those claims. Diamondback never asserted the insufficiency of Kahr's pleading for relief by motion to dismiss, motion to strike or any other similar procedural device. Diamondback was undeniably in position to fully and effectively defend against Kahr's claims and Diamondback's tactical decision to simply ignore the pleading rather than address any deficiencies it perceived to exist is not a course of conduct sanctioned by the Federal Rules of Civil Procedure. This makes the conclusion of the trial court all the more inexplicable.

c.   **The trial court has eviscerated Kahr's right to relief for Diamondback's infringement based on the barest of technicalities.**

FRCP 8(a)(2) requires only a short and plain statement of the claim in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *C.B. v. Pittsford Cent. Sch. Dist.*, 2009 U.S. Dist. Lexis 84010, 5-6 (W.D.N.Y. Sep. 15, 2009). Specific facts are not necessary; the statement need only give the defendant fair notice of the claim is and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S.Ct. 2197 (2007). "The time is past when purely technical defects in pleading of this sort which have not misled anyone should be permitted to prejudice a litigant's cause." *Bowman v. U. S. Dept. of Agriculture*, 352 F.2d 281, 284 (5th Cir. 1965). "[T]here is a recognized reluctance to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings." *Rosen v. Communication Services Group, Inc.*, 155 F.Supp.2d 310, 320 (E.D.Pa. 2001). Even a plainly defective pleading is a sufficient pursuit of judicial remedies to toll an applicable limitations period so that the matter may proceed on the merits. *See, Young v. U.S.*, 535 U.S. 43, 50, 122 S.Ct. 1036, 1041 (2002). That being the case, how can it be that Kahr's Prayer for Relief in the context of Diamondback's declaratory relief action is insufficient to preserve its own claims to relief, including damages?

54

Kahr moved to amend its claims for relief in January of 2012 after it came to came to light that Diamondback was distributing other lines of firearms, the DB9 and DB320, which also infringed the '914 Patent. Making no reference to the sufficiency of Kahr's pending Prayer for Relief as to the DB380 firearms which were the sole subject of Diamondback's Amended Complaint, the trial court denied leave to amend because it would introduce many new issues at a late stage of the litigation (though still months before the end of discovery and more than a year before the trial took place) and no good cause had been shown for seeking amendment after the deadline set forth in the case management order.[1]  A1679-70.  It was not until April 30, 2012 that the trial court made the astonishing ruling that it would recognize no claim for damages or other relief by Kahr as it deemed the Prayer for Relief an insufficient pleading. Nno opportunity to amend was afforded Kahr.

Ignoring for the moment the issue of the additional firearms that Kahr sought to bring into this case, the trial court's denial of any relief based on what it deemed to be an insufficient pleading without any opportunity to correct that pleading is contrary to law.  This Court has previously issued a writ of mandamus directing a district court to permit a counterclaim for damages after the case management order

---

[1] Kahr demonstrated that the firearms sought to be added to the case were not distributed to the public until after the deadline for amendments set forth in the case management order, yet this was not deemed good cause.

deadline since the issues of infringement, validity and enforceability were already before the district court on the opposing party's request for declaratory relief and, consequently, the case would go forward regardless rendering any assertion of undue delay irrelevant. *In re Laitram Machinery, Inc.*, 52 F.3d 343, 346 (Fed. Cir. 1995). In addition, this Court ruled that the patentee in that case would suffer prejudice if not allowed to pursue damages for infringement in that proceeding. *Id.* The prejudice Kahr has suffered here in being precluded from pursuing its claim for damages either in the case in chief or by way of further subsequent relief under §2202 is substantial.

> **d.     The trial court has compounded its error by concluding that Kahr is not entitled to further relief under §2202.**

Throughout the motion practice relating to these issues Diamondback has repeatedly cited this Court's rulings in *Capo, Inc. v. Dioptics Medical Products, Inc.,* 387 F.3d 1352 (Fed. Cir. 2004) and *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999) as supporting Diamondback's assertion that Kahr's insufficient pleading of its claims for affirmative relief results in a waiver if its rights to relief for infringement. The trial court bought into that argument, rejecting Kahr's requests for further relief under §2202. These cases do not support that conclusion.

First, Kahr's request for relief was never attacked by appropriate motion and

the trial court's ruling came in the context of denying a motion to compel with no opportunity afforded Kahr to correct or amend what the trial court concluded *sua sponte* was a defective pleading.  However, beyond that, 28 U.S.C. §2202 provides Kahr with a statutory right to proceed after declaratory judgment to obtain further relief.

> The prevailing party in a declaratory judgment action subsequently may seek further relief. *See Powell v. McCormack*, 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491 (1969). Such "further relief" can include damages. *See Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 537 (5th Cir.1978); *see also* 10 WRIGHT, MILLER, & KANE, Federal Practice and Procedure, §2771 at 765 n. 6 (1983).

*Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986).  Neither *Capo* nor *Vivid Technologies* stand for the proposition that the provisions of §2202 do not apply to patent cases and there is no evidence that Congress has exempted patent cases from the provisions of that section.  This Court's opinion in *Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, *supra*, recognizes that the patentee may seek further relief under §2202 in the same proceeding.  This is precisely what Kahr seeks to do here.  Kahr is entitled to pursue further relief for infringement of its patent by means of the further relief provisions of §2202 and the trial court's denial of that relief must be reversed.

e.     **The trial court abused its discretion in denying Kahr's motion for leave to amend and precluding discovery as to damages.**

The rulings denying Kahr's requested amendment to add other infringing products offered by Diamondback to the case and denying Kahr discovery in support of an award of damages were predicated on an erroneous view of the law as it applies to claims for declaratory relief under 28 U.S.C. §2201 and §2202 and compulsory counterclaims. An abuse of discretion is shown where that discretion is exercised based on an error of law. *Endo Pharmaceuticals Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1373-74 (Fed. Cir. 2014); *Wind Tower Trade Coalition v. U.S.*, 741 F.3d 89, 95 (Fed. Cir. 2014). As noted, the additional infringing firearms were not distributed to the public until after the deadline for amending the pleadings in this case. Even to the extent the district court determined that these were new issues in the case which might delay the trial, it could nevertheless have allowed the amendment, but required that all proceedings for damages or other relief take place post trial by way of further relief under §2202. Refusing to allow this pleading and discovery is of substantial prejudice to Kahr's rights which outweighed any burden on the proceedings, if any.[2]

---

[2] Kahr immediately filed a separate case related to the DB9 and DB320 firearms [Saeilo, Inc., et al. v. Diamondback Firearms, LLC, Case No. 6:12-cv-793-Orl-28-DAB], which has been stayed pending this appeal. Diamondback has already asserted that the claims as to the DB9 and DB320 were compulsory counterclaims in this case which have been waived. If in fact these claims were compulsory counterclaims in this case then Kahr should be able to pursue them here under §2202.

The trial court abused its discretion as to these matters and its rulings must be reversed.

### 2.    The trial court erred in denying Kahr injunctive relief.

The trial court's errors of law also resulted in Kahr being denied injunctive relief. Following the jury's verdict in this cause finding that Diamondback's DB380 firearms infringed the '914 Patent Kahr sought further relief in this action, as expressly permitted by 35 U.S.C. §283 and 28 U.S.C. §2202. Specifically, Kahr sought an injunction precluding further distribution of the DB380 line of firearms, recalling unsold inventories from retailers, removing marketing materials from the internet, surrendering Diamondback's inventory of unassembled parts for the DB380 line, etc. In response, Diamondback argued that this relief was not available as it had not been pled in the case and, relying on the district court's prior rulings, that Kahr had waived its remedies for infringement. Though Kahr requested the opportunity to take discovery to provide evidentiary support for the relief requested the district court, consistent with its previous rulings, denied the relief.

Again, the basis for the district court's ruling is apparent from its statements on the record:

> Well, I've got to rule on what I have before me. This may be a partial ruling because I will perhaps look into it further. But it's true that there

was no request for injunctive relief pled. There was no proof supporting or argument for -- no proof in support of argument for injunctive relief during the trial. This motion comes late. I'm not sure whether it's an appropriate remedy at this point or not, but based on the evidence before me, I find that the motion should be denied. There's no evidentiary support for that relief.

A1824-25[13:23-14:7]. As a consequence, Diamondback was permitted to proceed, upon expiration of the '914 patent, to distribute infringing products which were designed and produced while the patent was valid and enforceable. As the patent has now expired, a grant of injunctive relief is, at this point, moot. However, because Kahr stated a valid right to injunctive relief, as demonstrated hereafter, Kahr is entitled to an accounting for any infringing products distributed by Diamondback after the jury verdict and other relief to compensate for the manufacturing and marketing advantage that Diamondback gained through its infringing conduct as further relief in this proceeding.

A declaratory judgment can be used as a predicate to further relief, including an injunction. *Powell v. McCormack*, 395 U.S. 486, 499, 89 S.Ct. 1944, 1952 (1969). Injunctions in patent cases are governed by 35 U.S.C. §283: "The several courts having jurisdiction of cases under this title may grant injunctions to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable." 35 U.S.C. §283. Injunctions are appropriate "to prevent the violation

of any right secured by patent." *Id.*; *see also High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1554 (Fed. Cir. 2005) (observing 35 U.S.C. §283 "authorizes courts in infringement actions to grant preliminary injunctions pending trial, as well as permanent injunctions after a full determination on the merits"). The rights granted by a United States Patent are set forth in 35 U.S.C. §154, and these rights include the exclusive right to make, use, sell, offer to sell and import into the United States, any item covered by one or more claims of a patent. *See* 35 U.S.C. §154. Following the jury's express finding of infringement Kahr was entitled to entry of a permanent injunction protecting Kahr's exclusive rights to the technology covered by the '914 Patent for the remaining life of the patent. *Id.*

In determining whether to enter a permanent injunction, the courts apply the four-factor test announced by the Supreme Court in *eBay Inc. v. MercExchange, LLC*:

> According to well-established principles of equity, a [party] seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A [party] must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [patentee and the infringer], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

61

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Furthermore, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.* Courts routinely enter injunctions where a party has been shown to infringe (or even has been shown likely to infringe), a patent owner's rights. *See e.g. Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1384 (Fed. Cir. 2006) (affirming entry of preliminary injunction in favor of patentee that marketed a platelet aggregation inhibiting agent used to reduce thrombotic events such as heart attacks and strokes, against competitor who was trying to sell generic version of patentee's drug). The four-factor test set forth by the Supreme Court in *eBay* is a balancing test, and Kahr merely had to show that the totality of circumstances (rather than each and every individual factor) weighed in favor of the trial court entering permanent injunction against Diamondback. *See, e.g., Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp.2d 978, 982 (W.D. Tenn. 2006) ("The four-factor eBay test is a balancing test under which the plaintiff must demonstrate that the totality of circumstances weighs in its favor.").

Finally, in considering the final form for a permanent injunction, courts keep in mind the requirements of Federal Rule of Civil Procedure 65(d), which provide in relevant part:

Form and Scope of Injunction or Restraining Order.   Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed. R. Civ. P. 65(d).  Though the record contained ample evidence to support the granting of permanent injunctive relief and Kahr's proposed Permanent Injunction conformed to the requirements of Fed. R. Civ. P. 65(d) the district court erred in refusing to grant Kahr's request.

As demonstrated by the hearing transcript, the trial court based its ruling on the mistaken conclusion that Kahr had waived its right to seek any affirmative relief in this case based on its pleadings.  This ruling ignores the plain language and import of 28 U.S.C. §2202 authorizing further relief in declaratory judgment actions and the mandate of Rule 54(c) which provides that every ". . . final judgment should grant the relief to which each party is entitled, ***even if the party has not demanded that relief in its pleadings.***" (Emphasis added.)

The first and second eBay factors, irreparable harm and lack of an adequate remedy at law, weighed in favor of the entry of the requested permanent injunction.

The purpose of granting injunctive relief in a patent infringement action is to preserve the legal interests and rights of a patent owner to exclude others from making, using, selling, or offering to sell the patent owner's patented invention. *See e.g. C.R. Bard, Inc. v. U.S. Surgical Corp.*, 258 F. Supp.2d 355, 359 (D. Del. 2003). "The loss of market share and the resulting lost profits and loss of brand name recognition which [a party] suffer[s] because of [an infringing party's] continued sale of . . . infringing products constitute injuries that are both incalculable and irreparable." *Smith & Nephew*, 466 F. Supp.2d at 983. Monetary damages generally are not an adequate remedy against future infringement because the central value of holding a patent is the right to exclude others from using the patented product. *Id.*

Based on Diamondback's infringement of Kahr's '914 Patent, and the direct competition between Kahr and Diamondback, the trial court should have found that Kahr had suffered and would continue to suffer irreparable harm as a result of Diamondback's infringement. *See Novozymers A/S v. Genencor Int'l, Inc.*, No. CIV A 05-160-KAJ, 2007 WL 506828, at *17 (D. Del. Feb. 16, 2007). A permanent injunction was the only remedy that would have prevented Diamondback's continued infringement of Kahr's exclusive patent rights after the jury verdict.

The balance of hardships, also weighed in favor of the entry of a permanent injunction. In considering the balance of hardships, the trial court had to consider the

potential harm to Diamondback if it granted injunctive relief, versus the potential harm to Kahr if it did not. *See Sanofi-Synthelabo*, 470 F.3d at 1383. By allowing Diamondback to continue selling its infringing products, it prevented Kahr from exercising its right to exclude others from making, using, selling, or offering to sell products embodying the '914 patent technology. The trial court rendered Kahr's '914 patent rights, as to Diamondback's DB380 line of firearms, essentially worthless in that Diamondback's infringement and violation of Kahr's patent rights continued unimpeded. Consequently, Kahr was forced to forfeit a portion of the resources and goodwill it invested in developing its '914 patent products. Without the proposed injunction, Kahr suffered precisely the hardships patent protections are supposed to prevent.

Any impact that the injunction may have had on Diamondback's profitability would not be sufficient to tip the scale against an injunction. This Court has held that an injunction may be proper even where the injunction prohibits an infringer from selling its primary product and might put the infringer out of business. *See, Windsurfing Intern. Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *see also Biacore v. Thermo Bioanalysis Corp.*, 79 F. Supp.2d 422, 474 (D. Del. 1999). Thus, the balance of hardships clearly weighed in Kahr's favor.

The final factor a court should consider in determining whether to issue a

permanent injunction is the impact it will have on the public interest.  Cf. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1458 (Fed. Cir. 1988) ("[I]n a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of [injunctive] relief.")  One of the fundamental and inherent values of a patent is the right to exclude others from practicing, without permission, the patented invention. *See e.g. Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577-1578 (Fed. Cir. 1983) (explaining the basis for granting injunctive relief in patent cases and explaining that "without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research"); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985) (noting "encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.").  Kahr had the ability to meet the entire market demand for firearms containing the '914 Patent technology and the public would not have been harmed by the entry of a permanent injunction.

Here, the proposed injunction was both narrowly tailored and necessary to

prevent infringement as authorized by 35 U.S.C. §283. Any injunction must be narrowly tailored and cannot place restraints on otherwise lawful activity. *See Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Kahr asked the trial court to permanently enjoin Diamondback, and its affiliated entities and representatives, from infringing the specific claims of the '914 Patent that Diamondback has already been found to infringe, including making, using, offering to sell, and selling the DB380 line of firearms. Federal Rule of Civil Procedure 65(d) provides that an injunction "is binding upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order." Fed. R. Civ. P. 65(d). Consequently, the requested injunction was not over broad.

Kahr also asked the Court to order that: (1) Diamondback's inventory of infringing DB380 products be destroyed; (2) all product literature and marketing materials in Diamondback's possession relating to its infringing DB380 products be destroyed; (3) all engineering and design data relating to its infringing DB380 products be destroyed; and (4) Diamondback notify its distributors and retailers that its DB380 products infringe the '914 Patent and recall and destroy any infringing DB380 products in the possession of its distributors and retailers which have not yet been sold to the public. Denying the proposed injunction allowed Diamondback's

infringement to continue in that it gained a competitive advantage to which it was not entitled in that it was not forced to incur the time and expense associated with bringing a new product to market after the expiration of Kahr's patent. The Federal Circuit, courts in this district and other federal district courts have imposed similar injunctions to prevent and remedy infringement. For example, in *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568, 1577 (Fed. Cir. 1990) the Federal Circuit held that repeated and flagrant violation by an infringer justified broad injunctive relief.; *see also Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345 (Fed. Cir. 1998) (imposing broad prophylactic injunction against infringer).

Here, the record demonstrated that Diamondback's infringement (and effort to conceal such infringement) had been repeated and flagrant and Kahr proposed a narrowly tailored prophylactic injunction, which was specifically designed to prevent and remedy Diamondback's infringement. Accordingly, Kahr's proposed injunction was proper and should have been granted.

## IX.   CONCLUSION AND STATEMENT OF RELIEF SOUGHT ON CROSS APPEAL

The trial court's Amended Final Judgment in this case is improper and ineffective as a matter of law. It fails to fully adjudicate the rights of the parties in

this case and does not grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings. The Amended Final Judgment must be vacated and remanded with directions that the district court enter a final judgment consistent with the jury's verdict and conforming to the requirements of Rule 54(c).

In addition, the trial court's rulings denying Kahr further relief under 28 U.S.C. §2202 must be reversed and the case remanded for further proceedings. In ruling, *sua sponte*, that Kahr's Prayer for Relief in its Amended Answer was insufficient as a matter of law to state any claim for relief in this case the trial court misconstrued the law applicable to counterclaims in declaratory relief actions, particularly in the circumstances of this case. This error was compounded when the Court determined that in absence of any claim for relief being pled Kahr was precluded from seeking further relief under §2202. The trial court's rulings in this regard must be reversed and the case remanded for proceedings for further relief under §2202, including damages, resulting from Diamondback's infringement of the '914 patent both before and after the jury's verdict. These proceedings should include not only the DB380

line of firearms, but the DB9 and DB320 lines as well.

Dated: September 2, 2014          Respectfully submitted,

/s/ Douglas C. Spears
DOUGLAS C. SPEARS
Florida Bar No.: 373801
SWANN HADLEY STUMP
          DIETRICH & SPEARS, P.A.
1031 W. Morse Boulevard
Suite 350
Winter Park, Florida 32789
Telephone:  (407) 647-2777
Facsimile:   (407) 740-3114
dspears@swannhadley.com
Counsel for Defendants/Cross- Appellants

## PROOF OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk

of the Court for the United States Court of Appeals for the Federal Circuit by

using the appellate CM/ECF system on September 4, 2014.  In addition, upon

acceptance of this electronic filing, 6 paper copies of the foregoing will be filed

with the Clerk of the Court.

I further certify that counsel of record is registered CM/ECF users and will

be served by the appellate CM/ECF system as follows:

Brian R. Gilchrist, Esq., and Ryan Thomas Santurri, Esq., Allen, Dyer, Doppelt,
Milbrath & Gilchrist, P.A., P. O. Box 3791, Orlando, Florida 32802.


Date: September 4, 2014            /s/Douglas C. Spears
                                   Douglas C. Spears

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that this brief complies with the type-volume limitation, of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 16,363 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a monospaced typeface using Wordperfect 12 with Times New Roman 14-point font.

Date: September 4, 2014            /s/Douglas C. Spears
                                   Douglas C. Spears